**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TLX, Inc., | No. CV-19-04734-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| JetBlue Airways Corporation, | |
| Defendant. | |

Pending before the Court is Plaintiff TLX, Inc.'s ("TLX") Motion for Partial Summary Judgment (the "Motion"), (Doc. 136), along with its corresponding Statement of Facts, (Doc. 137). Defendant JetBlue Airways Corporation ("JetBlue") filed a Response, (Doc. 188), and a Controverting and Separate Statement of Facts, (Doc. 189). TLX replied, (Doc. 212), and the Court heard oral argument on March 24, 2022. The Court has considered the briefing, facts, and relevant law and will deny TLX's Motion for the reasons explained below.

**I.   BACKGROUND**

TLX engaged as a vendor in the airline crew reservation industry. (Doc. 137 ¶ 3.) In or around 2001, TLX created a travel management layover solutions software. (*Id.* ¶ 1.) In 2010, JetBlue invited TLX and several other competitors to bid on a Request for Proposal ("RFP") issued for JetBlue's business related to its crew reservation needs. (*Id.* ¶ 11.) TLX was engaged in a similar RFP process for crew related services by United Parcel Service ("UPS"), which was TLX's client at the time. (*Id.* ¶ 12.) Prior to TLX

submitting a response to JetBlue's RFP, JetBlue and TLX entered into a Non-Disclosure Agreement ("NDA"). (*Id.* ¶ 13.) The NDA provided in relevant part as follows:

> Receiving Party acknowledges that all material and information which has or will come into its possession or knowledge in connection with business discussions, conferences or other activities with the Disclosing Party (i) is proprietary to the Disclosing Party, having been designed, developed or accumulated by the Disclosing Party at a great expense and over lengthy periods of time, (ii) is secret, confidential and unique and the exclusive property of the Disclosing Party …. Receiving Party further acknowledges that any use or disclosure of Confidential Information other than for the sole benefit of the Disclosing Party will be wrongful and will cause irreparable damage to the Disclosing Party and, therefore, agrees to hold Confidential Information in strictest confidence and not to make use of it other than for the benefit of the Disclosing Party.
>
> Receiving Party shall not communicate Confidential Information in any in any form to any third party without the prior written consent of the Disclosing Party, and shall use its best efforts to prevent inadvertent disclosure of Confidential Information to any third party.

(*Id.* ¶ 14.)

TLX and its competitor, Accommodations Lodging Solutions ("API"), were competing against one another in both the UPS and JetBlue RFP process. (*Id.* ¶ 17.) JetBlue was API's client at the time. (*Id.* ¶ 18.) JetBlue agreed to provide API the opportunity to match the most competitive last round offer submitted to JetBlue by other bidders. (*Id.* ¶ 21.) A few weeks after TLX provided JetBlue with its RFP proposal, Angie Gobin, a JetBlue employee, emailed Ramzi Kamel of API the pricing information for all of the competitors in the JetBlue RFP, including TLX. (*Id.* ¶ 27.) Ramzi Kamel also procured a copy of TLX's second submission from JetBlue just four days after TLX submitted the information to JetBlue, although it is unclear how he procured this information. (*Id.* ¶ 31.) TLX argues that API's knowledge of its pricing provided API with an edge that allowed them to procure the JetBlue contract. (*Id.* ¶ 34.) Additionally,

TLX contends that API's knowledge of its pricing information allowed API to match TLX's pricing and procure the UPS contract. (*Id.* ¶ 35.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.

*Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

## III. DISCUSSION

The Court's primary inquiry centers around whether JetBlue breached the NDA when Gobin emailed Ramzi Kamel TLX's pricing information. This analysis will allow the Court to determine whether JetBlue engaged in unfair competition or breached its contract with TLX.

### A. Whether JetBlue Breached the Non-Disclosure Agreement

#### 1. Authentication

As an initial matter, JetBlue argues that Gobin's email to Ramzi Kamel is not admissible as evidence because the email is not authenticated. Courts in this district require that evidence offered in support of a motion for summary judgment be admissible "both in form and content." *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014). "Accordingly, unauthenticated documents cannot be considered in ruling on a motion for summary judgment because authentication is a 'condition precedent to admissibility.'" *Id.* (quoting *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). Importantly, documents produced by a party opponent during discovery are deemed authenticated. *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769 (C.D. Cal. 2004) (citing *Orr*, 285 F.3d 777 n. 20).

JetBlue argues that TLX has failed to authenticate Gobin's email. TLX has not submitted an affidavit authenticating the email, and JetBlue did not produce the email to TLX. Instead, TLX admitted during oral argument and in its Reply, (*see* Doc. 212 at 2),

that it received the email in a production from API in a prior litigation. Moreover, Gobin testified during her deposition that she did not send the email. (Doc. 189 ¶ 34.) Google also did not have records of the email. (*Id.* ¶ 35.)

TLX argues that API produced the email in its prior litigation with TLX and again in response to a subpoena in this litigation. (Doc. 212 at 2.) In addition, TLX argues that the email contains its confidential information that it submitted directly to JetBlue. (*Id.*) Thus, it contends, there is no other way API could have received it but from JetBlue. (*Id.*)

The Court need not make a decision on admissibility at this stage because—even if the documents are admissible—summary judgment is not appropriate as there is a factual dispute as to whether Gobin sent the email. Because Gobin testified in her deposition that she did not send the email, (Doc. 189 ¶ 34), the fact that she sent the email is in dispute. Moreover, as discussed below, the Court is precluded from granting summary judgment for reasons unrelated to the email's authenticity.

**2. The Content of the Email Fails to Show a Breach of the NDA**

Even if the Court assumes that the email chain between Gobin, Ramzi Kamel, and Mireille Kamel is admissible and that Gobin sent the email, TLX fails to show a breach of the NDA. The email from Gobin to Ramzi Kamel shows that she merely emailed Kamel TLX's pricing information, along with the pricing information for other participants in the JetBlue RFP. (Doc. 140-1 at 18–19.) No other information is attached to the email. Before detailing TLX's pricing alternatives, Gobin wrote, "this is all i [sic] have so far." (*Id.*) This is insufficient to show that JetBlue breached the non-disclosure agreement.

The NDA is, undisputedly, silent as to pricing. The agreement defines "Confidential Information" as "including, but not limited to, financial statements, business plans and strategies, trade secrets, new products and services, computer software, documentation and specifications, customer and prospect lists, and industry statistics and analysis." (Doc. 137-1 at 8.)

Furthermore, the "Confidentiality of Information" section of the NDA describes "secret and confidential" information as:

> [I]nclud[ing] but not limited to, trade secrets, systems, software, and hardware, concepts, designs and configurations, schedules, costs, performance features, specifications, techniques, copyrighted matter, patented or patentable inventions, plans, methods, drawings, data, tables, calculations, documents or other paperwork, computer program narratives, flow charts, source and object codes, and also includes business and marketing plans, dealings, arrangements, objectives, locations, and customer information

(*Id.*) The type of information described in this provision is more akin to proprietary business information—not pricing information. The categories of information cover items of internal strategy, not final costs which are typically well known in a competitive bidding process.

TLX offers a declaration from an employee wherein the employee avows that "we kept out pricing structure and models secret because TLX could provide significant savings to its clients due to the automation the software provided leading to low overhead." (Doc. 137-1 at 3 ¶ 11.) Yet, the pricing structure disclosed is the same as every other bidder—a price per room or a flat monthly subscription—and only the amount differed. The declaration continues, "[t]hese options and alternatives were secret, confidential, and proprietary." (*Id.* at 4 ¶ 16.) However, the declaration does not change the fact that it is unclear whether the definition of confidential information could include pricing information. TLX offers no other evidence to show that its pricing information was confidential pursuant to the NDA. Additionally, while TLX has implied that Gobin also emailed Kamel some sort of attachment which contains an analysis of TLX's entire system and how it works, (Doc. 207 at 9), that evidence is not before the Court at this time. Nothing in the record shows that Gobin emailed an API employee such information. Thus, without further proof that the terms of the NDA include pricing information—which naturally one would expect to be shared with competitors during a competitive bidding process—the Court finds that there is a material dispute of fact as to whether JetBlue ran afoul of the NDA.[1]

---

[1] The parties have also argued whether Gobin was acting as an agent of JetBlue when she

### B. TLX's Claims

Although not discussed in TLX's Motion, the parties submit that Arizona law governs TLX's claims. (*See* Doc. 188 at 8–10; Doc. 212 at 4.)

#### 1. Unfair Competition

"The common law doctrine of unfair competition is based on the principles of equity." *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998). "The general purpose of the doctrine is to prevent business conduct that is 'contrary to honest practice in industrial or commercial matters.'" *Id.* (quoting *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). To prevail on a claim of unfair competition under Arizona law, a plaintiff must either show that it was "engaged in competitive business" with the defendant or that the defendant's actions were "likely to produce public confusion." *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 983 (D. Ariz. 2015) (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992)) (internal quotation marks and citations omitted). "The Arizona Court of Appeals has held that the common law doctrine of unfair competition encompasses several tort theories, such as trademark infringement, false advertising, palming off, and misappropriation." *Joshua David Mellberg LLC* 96 F. Supp. 3d at 983 (quoting *Fairway Constructors, Inc.*, 970 P.2d at 956) (internal quotation marks omitted). Palming off consists of "a false representation tending to induce buyers to believe that defendant's product is that of the plaintiff." *Id.* (quoting *Fairway Constructors, Inc.*, 96 F. Supp. 3d at 956).

TLX has failed to proffer evidence to prove its unfair competition claim. TLX fails to show that it was competitively engaged with JetBlue or that JetBlue's actions were likely to produce confusion. TLX is a business that provides "travel management layoff solutions," (Doc. 155 ¶¶ 1–3), and JetBlue is a commercial airline business, (Doc. 189 ¶ 1.) The two businesses are obviously not competitors. *See Sutter Home Winery, Inc.*, 971

---

sent the email in question. However, in light of the Court's finding that there is a dispute of material fact as to whether the email ran afoul of the NDA, the Court finds it unnecessary to analyze that issue.

F.2d at 408 (parties must "solicit the same trade" or "solicit the same customers" to be competitors) (quoting *Lininger v. Desert Lodge*, 160 P.2d 761, 764 (Ariz. 1945)).

TLX argues that the evidence in this case shows that JetBlue misappropriated TLX's confidential information. (Doc. 207 at 4–5.) This argument doesn't support a claim for unfair competition for two reasons. First, as explained above, there is a dispute of fact as to whether TLX's pricing information can be classified as confidential information. Second, TLX fails to explain how misappropriation of confidential information supports a claim for unfair competition when the competitor is an uninvolved third party—API. TLX fails to provide any case law supporting a claim of unfair competition against a company that is not a competitor but a customer. Accordingly, TLX's request for summary judgment on their unfair competition claim is denied.

### 2. Breach of Contract

To state a cause of action for breach of contract in Arizona, a plaintiff must plead facts alleging "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Dylan Consulting Servs. LLC v. SingleCare Servs. LLC*, No. CV-16-02984-PHX-GMS, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018).

The Court must deny summary judgment on TLX's breach of contract claim because, as discussed above, there is a dispute of fact as to whether pricing information was covered by the NDA. With this fact disputed, the Court cannot find that JetBlue breached the agreement with TLX. Therefore, TLX's request for summary judgment on its breach of contract claim must be denied.[2]

///
///
///
///

---

[2] Having denied Plaintiff's request for summary judgment on both of Plaintiff's claims, the Court need not address the parties' causation arguments.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** denying Plaintiff's Partial Motion for Summary Judgment. (Doc. 136.)

Dated this 31st day of March, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge